IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN INGRAM, III,<br>    Plaintiff, | :<br>:<br>: | Civil Action |
| v. | :<br>: | No. 24-cv-0174 |
| ABINGTON SCHOOL DISTRICT<br>AUTHORITY,<br>    Defendant. | :<br>:<br>:<br>: | |

<u>**MEMORANDUM**</u>

**J. Younge**                                                                                                                              **July 3, 2025**

Currently before the Court is an uncontested *Motion for Summary Judgement* filed by Defendant, Abington School District Authority. The Court finds this Motion appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78, L.R. 7.1(f).

**I.     FACTUAL AND PROCEDURAL HISTORY:**

    **A.     Procedural History:**

Plaintiff initiated this action on January 15, 2024. In his original complaint, Plaintiff asserted that Defendant created a hostile work environment in violation of Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII") through disparate treatment, retaliation, along with associated violations of the ADA, and the Pennsylvania Human Relations Act (hereinafter "PHRA") (Complaint, ECF No. 1.) Shortly thereafter, Defendant filed a partial Motion to Dismiss the original complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) – seeking to dismiss Counts I, II, and VII, and parts of Counts III and VI. (ECF No. 7.) Plaintiff subsequently filed an Amended Complaint. In the Amended Complaint, Plaintiff removed all language related to the theory that Defendant created a hostile work environment. Instead, Plaintiff now alleges (1) disparate treatment based upon race/color and disability under Title VII (Count I); (2) failure to accommodate under the ADA (Count II); (3) retaliation purportedly under the ADA (Count

1

III); and (4) claims under the Pennsylvania Human Relations Act (PHRA) restating Counts I through III of the Amended Complaint as state law claims (Count IV).

Defendant subsequently filed a partial Motion to Dismiss which the Court granted in part and denied in part. (Motion to Dismiss Amended Complaint, ECF 10.) Plaintiff's claims for race or color retaliation under Counts One and Four of the Amended Complaint were dismissed with Prejudice. Currently, before the Court for Summary Judgement are Plaintiff's claims for (1) disparate treatment based upon disability under Title VII (Count I); (2) failure to accommodate under the ADA (Count II); (3) retaliation purportedly under the ADA (Count III); and (4) claims under the Pennsylvania Human Relations Act (PHRA) restating Counts I through III of the Amended Complaint as state law claims (Count IV).

B.     **Relevant Factual History:**

Plaintiff, John Ingram, III, is an African American former employee of Defendant. Central to this Motion for Summary Judgement are Plaintiff's allegations that Defendant, through its Director of Human Resources, Mrs. Williams, subjected him to mistreatment/disparate treatment based on his race. (Amended Complaint ¶ 3 (hereinafter "AC"), ECF No. 8.) Specifically, Plaintiff claims that during his time with Defendant, he received fewer workplace accommodations compared to his Caucasian colleagues. (*Id.* at ¶ 3.) Plaintiff also alleges that he was given disciplinary write-ups for "no-call/no-shows" that were not as stated and that Caucasian bus drivers who committed similar or more severe infractions were not disciplined in the same manner. (*Id.*) Plaintiff also brings a disability discrimination claim as well as a retaliation claim under the Americans with Disability Act (hereinafter "ADA"). Claims pled under the ADA are primarily based on allegations that Plaintiff suffered from a weakened

immune system caused by cancer and/or cancer treatment and purported complications cause by the COVID-19 virus.

Plaintiff began working as a bus driver for Defendant in May 2017 and his employment relationship continued until February 2021, although his final day of in-person, paid employment was in March 2020, at the onset of the COVID-19 pandemic. (*Id.* at ¶ 3-4.) Many bus drivers, including Plaintiff, made claims for unemployment insurance, but Defendant denied all claims. (*See* Statement of Undisputed Material Facts (hereinafter "SMF"), ECF No. 20-1 at ¶ 19.) In September 2020, Defendant instructed Plaintiff that all in-person work would resume. (AC, at ¶ 3). Plaintiff thereafter communicated to Mrs. Williams that he was battling cancer, among other health issues, which resulted in a compromised immune system, and which would require a reasonable accommodation in the form of unpaid leave. (*Id.*)

Defendant granted Plaintiff unpaid leave through November 30, 2020. On or around November 1, 2020, Plaintiff requested an extension on his unpaid leave and was granted an extension through February 2021. (*Id.* at ¶ 5.) On February 12, 2021, Plaintiff requested a third extension, to which Defendant allegedly gave him an ultimatum that he should either return to work or be terminated (*Id.*) Furthermore, on February 17, 2021, Plaintiff obtained a letter from one of his doctors, recommending Plaintiff stay out of work until September 2021, the following school year. (SMF, Ex. 1, ECF No. 20-6.) In response, Defendant requested that the Plaintiff complete and submit a HIPAA authorization form to release his medical records. Plaintiff declined to comply with Defendant's request and has not returned to work.

In this litigation, Plaintiff advances a theory of constructive discharge and argues that Defendant terminated its employment relationship with him. (AC, at ¶ 5.) Plaintiff's employment, however, was neither terminated by Defendant nor voluntarily terminated by

3

himself. (*See* SMF, at ¶¶ 59-60.) Plaintiff's current status, of record, is that he is on an unpaid leave of absence (*Id*. at ¶ 61.) Defendant claims that it is and was willing to grant reasonable accommodations requested by Plaintiff's primary care physician. (*Id*. at ¶ 62.) Plaintiff, himself, made a request for a protective shield in the bus around the driver as an accommodation. (Ingram Deposition, at p. 38, SMF, Exhibit E, ECF No. 20-6.) However, Defendant could not accommodate the request due to the fact that the Pennsylvania Department of Transportation (hereinafter "PDT") denied all requests for installation of interior protective shields because the PDT did not want to jeopardize passenger safety in an effort to protect drivers from the COVID-19 virus. (SMF, ECF No. 20-7, at p. 5-6.)

II.     **LEGAL STANDARD:**

Summary judgment is appropriate if the movant shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *Liberty Mut. Ins. Co. v. Sweeney*, 689 F.3d 288, 292 (3d Cir. 2012). To defeat a motion for summary judgment, there must be a factual dispute that is both material and genuine. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute over a material fact is "genuine" if, based on the evidence, "a reasonable jury could return a verdict for the nonmoving party." *Id*.

The movant bears the initial burden of demonstrating the absence of a genuine dispute of a material fact. *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016). When the movant is the defendant, they have the burden of demonstrating that the plaintiff "has failed to establish one or more essential elements of her case." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425

4

(3d Cir. 2013). If the movant sustains their initial burden, "the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (internal quotations omitted) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

At the summary judgment stage, the court's role is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249; *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007). In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. *See Horsehead Indus., Inc. v. Paramount Commc'ns, Inc.*, 258 F.3d 132, 140 (3d Cir. 2001). Nonetheless, the court must be mindful that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Failure to oppose a motion for summary judgement constitutes a "waiver of the opponent's right to controvert the facts asserted by the moving party in the motion for summary judgement or the supporting material accompanying it." *Anchorage Assocs v. V.I. Bd. Of Tax Review*, 922 F. 2d. 168, 175-76 (3d Cir. 1990)). By failing to file a response within the specified time, "the nonmoving party waives the right to respond to or to controvert the facts asserted in the summary judgment motion." *Reynolds v. Rick's Mushroom Serv.*, 246 F. Supp. 2d 449, 453 (E.D. Pa. 2003) (quoting *Reed v. Nellcor Puritan Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002). By failing to respond to Defendant's Motion for Summary Judgment within the appropriate

timeframe, Plaintiff places this Court in the position of ruling on the motion without consideration of Plaintiff's perspective on any of the pertinent issues.

**III.    DISCUSSION:**

Plaintiff brings this employment discrimination action based on theories of racial and disability discrimination, retaliation for exercising his rights under the ADA, and failure to accommodate and engage in the interactive process. Plaintiff offers no direct evidence of Defendant's bias to support his employment discrimination claims. In an employment discrimination lawsuit based on direct evidence of bias, the plaintiff must point to evidence that "directly reflect[s] the alleged discriminatory attitude" and be "so revealing of discriminatory animus that it is not necessary to rely on any presumptions of the *prima facie* case to shift the burden of production." *Buchsbaum v. Univ. Physicians Plan*, 55 F. App'x 40, 45 (3d Cir 2002). "If the trier of fact must infer discrimination from the employer's remarks or actions, then the evidence is not direct evidence of discrimination." *Weightman v. Bank of N.Y. Mellon Corp.*, 772 F. Supp. 2d 693, 702 (W.D. Pa. 2011).

Since Plaintiff has failed to come forward with direct evidence of bias, legal theories asserted by Plaintiff are subject to the familiar *McDonnell Douglas* burden-shifting framework. *See Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008) (applying *McDonnell Douglas* to Title VII racial discrimination claims); *Moore v. City of Philadelphia*, 461 F.3d 331, 342 (3d Cir. 2006), as amended (Sept. 13, 2006) (applying *McDonnell Douglas* to retaliation claims). In the absence of direct evidence of disparate treatment, the *McDonnell Douglas* burden-shifting framework applies. *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)).[1]

---

[1] Employment retaliation claims are subject to the *McDonnell Douglas* burden-shifting analysis, wherein the plaintiff employee must establish a *prima facie* case of discrimination. To establish a *prima*

To proceed on a theory of racial discrimination under the *McDonnell Douglas* framework, plaintiff must "establish a *prima facie* case of discrimination by showing that: (1) [he] is a member of a protected class; (2) [he] was qualified for the position [he] sought to attain or retain; (3) [he] suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Id*. (citing *McDonnell Douglas*, 411 U.S. at 802). The *McDonnell Douglas* burden-sifting framework applies with equal force to employment disability discrimination claims based on circumstantial evidence. *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000). To establish a *prima facia* case for disability discrimination under the ADA based on circumstantial evidence, Plaintiff must satisfy the elements of the *McDonnell Douglas* burden-shifting framework. *Id.* At the summary judgment stage, this means Plaintiff must present sufficient evidence to show: (1) that she is a disabled person within the meaning of the ADA; (2) that she is otherwise qualified to perform the essential functions of her job with or without reasonable accommodation; and (3) that she suffered an adverse employment action because of her disability. *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999); *see also Sulima v. Tabyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010).

At the summary judgment stage, a Plaintiff cannot rely on unsupported allegations in the pleadings; rather, he/she must come forward with evidence to establish by a preponderance of the evidence that genuine issues of material fact exist for disposition at trial. *Solomon v. Soc'y of*

---

*facie* case of retaliation, a plaintiff must demonstrate: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action. *Moskowitz v. Neshaminy Sch. Dist.*, No. 20-cv-5016, 2022 U.S. Dist. LEXIS 165102, 2022 WL 4225398, at *9 (E.D. Pa. Sept. 13, 2022) (quoting *Krouse v, American Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997)). *Id.* A plaintiff must prove that the defendant's adverse employment decision would not have occurred "but for" the plaintiff's protected conduct. *Univ. of Texas v. Nassar*, 570 U.S. 338, 361 (2013).

*Auto. Eng'rs,* 41 Fed. Appx. 585, 586 (3d Cir. 2002) (affirming district court's rejection of claims based solely on the plaintiff's own testimony, stating "a plaintiff cannot rely on unsupported assertions, speculation, or conclusory allegations to avoid a motion for summary judgment.") (citing *Celotex Corp v. Catrett,* 477 U.S. 317, 324 (1986)); *see also Ridgewood Bd. of Educ. v. N.E.,* 172 F.3d 238, 252 (3d Cir. 1999) (holding same).

   1. **Plaintiff Fails to Come Forward with Evidence to Support His Circumstantial Claims of Employment Discrimination and Retaliation:**

Theories of racial and disability discrimination asserted by Plaintiff along with his claims for retaliation fail because Plaintiff cannot establish that he suffered an adverse employment action. Plaintiff is completely unable to establish that he suffered an adverse employment action which is a prerequisite for establishing a *prima facia* case under the test espoused in *McDonnald Douglas*. An adverse employment action is one in which a reasonable person could find that plaintiff's conditions of employment were substantially worsened. *Dilenno v. Goodwill Indus. of Mid–Eastern Pa.,* 162 F.3d 235, 236 (3d Cir.1998).

The undisputed facts of record establish that Plaintiff did not quit his job as a bus driver and Defendant did not fire him. (SMF ¶¶ 58-60.) Plaintiff was granted a leave of absence and there is no evidence to show he was terminated or constructively discharged by Defendant. In fact, Plaintiff is still listed as an employee of Defendant on unpaid leave. (SMF ¶ 87.) For Plaintiff to claim an adverse employment action based on a theory of constructive discharge he must establish that "he was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign." *See Green v. Brennan*, 578 U.S. 547, 555-556 (2016). Additionally, he must show that he actually resigned from the position. *Id.* Therefore, Plaintiff cannot establish wrongful termination or constructive discharge. The Supreme Court has explained that:

8

> A claim of constructive discharge . . . has two basic elements. A plaintiff must prove first that he was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign. But he must also show that he actually resigned. In other words, an employee cannot bring a constructive-discharge claim until he is constructively discharged. Only after both elements are satisfied can he file suit to obtain relief.
>
> An ordinary wrongful discharge claim also has two basic elements: discrimination and discharge. See *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); 1 B. Lindemann, P. Grossman, & C. Weirich, Employment Discrimination Law 21–33 (5th ed. 2012) (Lindemann) ("The sine qua non of a discharge case is, of course, a discharge"). The claim accrues when the employee is fired.

*See Green v. Brennan*, 578 U.S. 547, 555-556 (2016). Therefore, Plaintiff cannot establish that he was the victim of an adverse employment action based on a theory of wrongful termination or constructive discharge.

In this case, Plaintiff requested a leave of absence, and it is undisputed that Defendant permitted Plaintiff to take the leave of absence that he requested. (*See* SMF, ¶¶ 28, 32, 46, 61-62.) The voluntary taking of a leave of absence is not an adverse employment action. *See Obermeyer v. McDonough*, 2024 WL 3890686 at *7 (S.D. Ohio August 21, 2024) (rejecting the claim that a voluntary leave of absence is an adverse employment action). *See also, Blum v. Schlegel*, 18 F.3d 1005, 1012 (2d Cir. 1994) (affirming district court's holding that there was no adverse action where Plaintiff consented to postponing his tenure review); *Brigette Bodie-Jernigan v. School Board of Broward County, Florida*, 2024 WL 3806880 *3 (S.D. Fla. July 30, 2024) (electing to take an extended unpaid leave of absence is not adverse employment action); *Perez v. N.Y. Presbyterian/Weill Cornell Med. Ctr.*, 2024 WL 1514216 at *7 (S.D.N.Y. Apr. 8, 2024) (no adverse employment action where hospital permitted Plaintiff to take leave for the entire period during which she otherwise would have had to be vaccinated).

9

Plaintiff first requested an accommodation for his medical issues in February 2021. (*See* Facts ¶ 71.) To the extent Plaintiff suffered any unnecessary strict review of his work or disparate discipline, it all occurred prior to March 2020. Therefore, these incidents could not have been in retaliation for a requested accommodation. Plaintiff's allegation that a denial of his request for an accommodation was Defendant's retaliation against him for requesting an accommodation is, therefore, simply "a 'repackaging' of his failure-to accommodate claim and, as such, fails as a matter of law." *Gardner v. SEPTA*, 410 F. Supp. 3d 723, 745 (E.D. Pa. 2019). With respect to the assertion that Defendant challenged his claim for unemployment, it is undisputed that Plaintiff filed his unemployment claim in the Summer of 2020 and that all of the bus drivers were filing such claims and that the Defendant opposed every single claim for unemployment. (*See* Facts ¶¶ 19-20.) This conduct pre-dated Plaintiff's first request for leave based on his own medical issues. Moreover, Plaintiff has not provided evidence that any actions the Defendant took in connection with Plaintiff's unemployment application were, in any way, causally connected to his request for an accommodation. Finally, Plaintiff has not provided evidence to show that any actions the Defendant took concerning his son's truancy was causally connected to his request for an accommodation. (*See* Facts ¶¶ 66-69.)

Plaintiff presents no evidence that Defendant acted under circumstances that could give rise to an inference of intentional discrimination. A central focus of the *McDonnell Douglas* framework is whether the employer is treating some people less favorably than others because of their race, color, religion, sex, or national origin. *See Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 798 (3d Cir. 2003). Common circumstances giving rise to an inference of unlawful discrimination include the hiring of someone not in the protected class as a replacement or the more favorable treatment of similarly situated employees outside the plaintiff's protected class.

10

*See Smith v. Sec'y U.S. Navy*, 843 F. App'x 466, 469 (3d Cir. 2021); *May v. PNC Bank*, 434 F. Supp. 3d 284, 298 (E.D. Pa. 2020). Here, Plaintiff has no evidence that the Defendant treated anyone more favorably than Plaintiff. Plaintiff was given all the leave he requested, including an open-ended leave of absence. Plaintiff has no evidence that anyone else was treated more favorably than he was treated. As such, Plaintiff cannot establish a *prima facia* case under the *McDonnell Douglas* burden-shifting framework.

2. **Plaintiff Cannot Prevail on Claims for Failure to Accommodate and/or to Engage in the Interactive Process in Good Faith:**

To establish an ADA failure-to-accommodate claim, a plaintiff must show: (1) he was disabled, and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated. *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 157 (3d Cir. 2017). Employers cannot assume employees are disabled and need accommodations. *Conneen v. MBNA Am. Bank, N.A.*, 334 F.3d 331, 331 (3d Cir. 2003) ("[N]either the law nor common sense can demand clairvoyance of an employer."). A request for an accommodation does not need to be in writing "or formally invoke the magic words 'reasonable accommodation,'" but "the notice nonetheless must make clear that the employee wants assistance for his or her disability." *Taylor*, 184 F.3d 296 at 313. Participation in the process "is the obligation of both parties, however, so an employer cannot be faulted if after conferring with the employee to find possible accommodations, the employee then fails to supply information that the employer needs or does not answer the employer's request for more detailed proposals." *Id*. at 317. Finally, employers will not incur liability for failing to provide a reasonable accommodation that was never requested. *LaGatta v. Pa. Cyber Charter Sch.*, 726 F. Supp. 2d 578, 589 (W.D. Pa. 2010).

11

In this case, Plaintiff cannot prevail on theories of failure to accommodate and engage in the interactive process because: (1) his doctor provided a medical certification which stated that he was not permanently disabled and Plaintiff provided no evidence to the contrary; (2) he was provided with all of the leave his doctor's notes requested; (3) Plaintiff failed to engage in the interactive process when he failed to respond to requests for medical certifications; and (4) assuming Plaintiff made a request for installation of an internal shield around the driver as a reasonable accommodation for his alleged disability, such an accommodation was not legally permissible.

First, Plaintiff's doctor submitted a medical certification to Defendant which stated that Plaintiff was not disabled and that he did not need a reasonable accommodation to perform the essential functions of his job. (*See* SMF ¶¶ 44-45.) Plaintiff came forward with no evidence to establish that he is in fact permanently disabled or that he needs a reasonable accommodation to perform the essential functions of his job. Under the ADA, disability means "a physical or mental impairment that substantially limits one or more major life activities ...." 42 U.S.C. § 12102(1). Plaintiff alleges that he is "a cancer survivor with various ailments." (*See* AC, at ¶ 1.) However, Plaintiff has no evidence that being a cancer survivor substantially limits one or more major life activities of Plaintiff. Indeed, Plaintiff's doctor at Fox Chase Cancer Center advised the Defendant that Plaintiff is not disabled and did not need any accommodation to perform the essential functions of his job. (*See* SMF ¶¶ 44-45.) As a result, Plaintiff has no evidence that he is actually disabled within the meaning of the ADA and fails to establish the first element of a failure to accommodate claim.

Second, Plaintiff was granted all sick leave requested in the various doctor's notes that he provided to Defendant. (*See* SMF ¶¶ 46, 61-62.) Employers can show their good faith in a

number of ways, such as taking steps like the following: meet with the employee who requests an accommodation, request information about the condition and what limitations the employee has, ask the employee what he or she specifically wants, show some sign of having considered the employee's request, and offer and discuss available alternatives when the request is too burdensome. These steps are consistent with the recommendations in the EEOC's interpretive guideline. *Taylor*, 184 F.3d at 317 (citing 29 C.F.R. Pt. 1630, App. § 1630.9). Courts have found that where an employer provides the accommodations which are requested in a doctor's note, it has engaged in the interactive process in good faith. *Fischer v. Pepper Hamilton LLP*, 2016 WL 362507, at *13 (E.D. Pa. Jan. 29, 2016) (adjusting schedule to comport with various doctor's notes establish good faith). Moreover, it is undisputed that Plaintiff failed to provide Defendant with the medical certifications it was requesting. (*See* SMF ¶¶ 50, 55-58.) "[A]n employer cannot be faulted if...the employee...fails to supply information that the employer needs." *Taylor*, 184 F.3d at 317. See also, *Fischer*, 2016 WL 362507, at *14 (finding that the employee failed to engage in the interactive process in good faith when the employee did not timely provide the medical information the employer requested).

      Finally, Plaintiff now claims that he requested an accommodation in the form of an interior shield installation around the driver's compartment in the school bus. (*See* SMF ¶ 76.) However, Plaintiff has offered no evidence that he requested the installation of the shield as a means of providing him with "assistance for his [] disability." *Taylor*, 184 F.3d at 313. Plaintiff claims that he requested a shield during a meeting of the entire transportation department after COVID when he and 15 to 20 other drivers indicated that they would like a shield installed around the bus driver. (*See* SMF ¶ 77.) Plaintiff also claimed that he made the request during an unemployment hearing. (*See Id*. at ¶ 78.) However, Plaintiff has provided no evidence to indicate

13

that he was making either request as a reasonable accommodation for "assistance for his [] disability." *Taylor*, 184 F.3d at 313. Moreover, even if Plaintiff did make requests for installation of an interior shield around the bus driver compartment, such a modification was not possible. Defendant provided evidence to establish that the Pennsylvania State Police directed a neighboring school district to remove interior shields that had been installed around the driver compartment in its school buses. (*See* SMF ¶¶ 97-80.) In fact, during the summer of 2020, the Pennsylvania Department of Transportation turned down several requests to waive state regulations to permit the installation of such shields. (*See* SMF ¶ 81.) *See also* 67 Pa. Code § 171.58(1) ("The interior of every school bus shall be free of unnecessary projections likely to cause injury.").

In a failure to accommodate case, plaintiff has the burden to identify reasonable accommodations that would help plaintiff perform his or her essential job functions. *Walton v. Mental Health Ass'n. of Se. Pennsylvania*, 168 F.3d 661, 670 (3d Cir. 1999). In this case, Plaintiff provided no evidence to establish that a single school bus within the Commonwealth of Pennsylvania had internal barriers installed around drivers. (*See* SMF at ¶ 82.) Moreover, Plaintiff never asked his doctors about whether an internal shield would be an effective safety measure for his condition; he simply assumed that having a shield would be beneficial. (*See* SMF at ¶¶ 83-84.) Furthermore, Plaintiff did not definitely state he would return to work had such a shield been installed. (*See* SMF ¶ 85.)

Based on the foregoing, Plaintiff cannot prevail on the theory that Defendant failed to accommodate and/or make a good faith attempt to engage in the interactive process.

## IV. CONCLUSION:

For the foregoing reasons, Defendant's Motion for Summary Judgment is Granted. An appropriate order shall follow.

BY THE COURT:

/s/ John Milton Younge
Judge John Milton Younge